# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for Century Bank, Federal Savings Bank,**

     **Plaintiff,**

v.                                                          Case No.  8:12-cv-2547-T-30TBM

**BARRY M. FLORESCUE, et al.,**

     **Defendants.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss, Strike, or For More Definite Statement (Dkt. 16), Plaintiff's Response to Defendants' Motion to Dismiss, Strike, or For More Definite Statement (Dkt. 20), Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss, Strike, or For More Definite Statement (Dkt. 27), Plaintiff's Sur-Reply (Dkt. 29), and Plaintiff's Notice of Supplemental Authority (Dkt. 30).  The Court, having reviewed the motion, response, replies, and being otherwise advised in the premises, concludes the motion to dismiss should be granted in part and denied in part.

## BACKGROUND

The instant care arises out of the failure of Century Bank, Federal Savings Bank, Sarasota, Florida ("Century"), which was closed by the Office of Thrift Supervision on November 13, 2009.  The Federal Deposit Insurance Corporation ("FDIC"), as receiver for

Century, succeeded to any claims against Century's former directors and officers.  During the applicable time period, Defendants Barry Florescue, Stanley Kreitman, Charles Miersch, and James Nickerson were Century directors and Defendant John O'Neill served as the President, Chief Operating Officer, and a director for Century.

The FDIC filed a two-count complaint against the Defendants for damages caused by their alleged malfeasance of their duties owed to Century in approving ten credit transactions. Count I is for negligence under Florida law, and Count II is for gross negligence under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").

The claims for negligence and gross negligence center on the Defendants' alleged wrongful acts and omissions connected with ten speculative and high risk transactions, including six commercial real estate and acquisition, development, and construction transactions, two residential real estate transactions, and two transactions involving the commercial financing of a speculative investment operation.  All ten transactions were approved by the Defendants from May 10, 2006, through April 28, 2009.  The FDIC attached Exhibit A to the complaint which charts the ten loans, their borrowers (identified by initials), their amounts and approval dates, the identity of which board members approved them, their alleged deficiencies, and the estimated damages sustained by Century for each transaction.

The FDIC alleges numerous violations of the Defendants' duties to Century. Specifically, the FDIC alleges that the following deficiencies with respect to the ten transactions adversely affected Century:

(1) failure to obtain, analyze, and evaluate historical borrower and guarantor financial information required to assess the creditworthiness of the borrower and guarantor as well as their respective ability to service debt and carry the projects; (2) engaging in transactions with borrowers and/or guarantors who had not demonstrated sufficient liquidity to service debt; (3) failure to evaluate collateral and other sources of repayment; (4) failure to adhere to the Bank's loan to value ratio limits; (5) turning a blind eye to glaring deficiencies in transaction presentation information; (6) failure to evaluate properly the underlying real estate, to consider issues raised in appraisals, or to obtain adequate appraisals; (7) engaging in transactions outside of the Bank's geographic business territory; (8) approval of transactions without obtaining full pre-funding approval; and (9) approval of transactions to borrowers of known questionable honesty.

Dkt. 1 at 3, ¶ 4.

The Defendants seek dismissal of the complaint, or alternatively, the striking of all allegations of ordinary negligence and requiring the FDIC to provide a more definite statement concerning each Defendant's role in the ten transactions.

## MOTION TO DISMISS STANDARD

When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). On the contrary, legal conclusions "must be supported by factual allegations." *Id.* Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

While a "heightened fact pleading of specifics" is not required, "enough facts to state a claim to relief that is plausible on its face" is necessary. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Moreover, when the factual allegations are "not only compatible with, but indeed [are] more likely explained by" lawful activity, the complaint must be dismissed. *Iqbal*, 556 U.S. at 680.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 12(b)(6) requires an action to be dismissed if a dispositive legal issue precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## **DISCUSSION**

Under the FIRREA,

> A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the [FDIC] . . . acting as conservator or receiver . . . for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the [FDIC] under other applicable law.

12 U.S.C. § 1821(k). As such, the FIRREA permits the FDIC to bring claims for monetary damages against directors and officers of a bank for either gross negligence or for any claim as permitted by applicable state law, including, potentially, simple negligence. *See* 12 U.S.C.

§ 1821(k). *See also FDIC v. Stahl*, 89 F.3d 1510, 1515-16 (11th Cir. 1996) (explaining that, although the FIRREA's gross negligence standard displaced any federal common law negligence claims, there was insufficient congressional intent to preempt state law claims and that the "savings clause" of the last sentence of § 1821(k) enables state law claims for simple negligence to survive).

Here, the FDIC brings both claims against the Defendants: ordinary negligence under Florida law and gross negligence under the FIRREA.  As discussed below, Count I for ordinary negligence is dismissed with prejudice except as to Defendant O'Neill while Count II remains as adequately pled by the FDIC.

## I.      Count I: Ordinary Negligence

The FDIC premises Count I for ordinary negligence on Florida Stat. § 607.0830, which provides:

> (1) A director shall discharge his or her duties as a director, including his or her duties as a member of a committee:
>
> > (a) In good faith;
> >
> > (b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
> >
> > (c) In a manner he or she reasonably believes to be in the best interests of the corporation.

Fla. Stat. § 607.0830(1).  This section clearly imposes an ordinary negligence standard of care.  *See FDIC v. Price*, 2012 WL 3242316, at *2 (M.D. Fla. Aug. 8, 2012).  The FDIC

urges this Court to accept this section in isolation as the bar for imposing liability upon directors.

However, the very next section in the Florida Statutes, entitled "Liability of directors," imposes restrictions on any claims against directors for monetary damages.  Fla. Stat. § 607.0831, which codifies Florida's business judgment rule,[1] provides in pertinent part:

> (1) A director is not personally liable for monetary damages to the corporation or any other person for any statement, vote, decision, or failure to act, regarding corporate management or policy, by a director, unless:
>
> (a) The director breached or failed to perform his or her duties as a director; and
>
> (b) The director's breach of, or failure to perform, those duties constitutes:
>
> 1.  A violation of the criminal law, unless the director had reasonable cause to believe his or her conduct was lawful or had no reasonable cause to believe his or her conduct was unlawful.  A judgment or other final adjudication against a director in any criminal proceeding for a violation of the criminal law estops that director from contesting the fact this his or her breach, or failure to perform, constitutes a violation of the criminal law; but does not estop the director from establishing that he or she had reasonable cause to believe that his or her conduct was lawful or had not reasonable cause to believe that his or her conduct was unlawful;
>
> 2.  A transaction from which the director derived an improper personal benefit, either directly or indirectly;
>
> 3.  A circumstance under which the liability provisions of s. 607.0834 are applicable;
>
> 4.  In a proceeding by or in the right of the corporation to procure a judgment in its favor or by or in the right of a shareholder, conscious disregard for the best interest of the corporation, or willful misconduct; or

---

[1] *Stahl*, 89 F.3d at 1516 (explaining that, although characterized as the business judgment rule, § 607.0831 provides far more protection than the common law rule that governed prior to the statutes' enactment in 1987).

> 5.  In a proceeding by or in the right of someone other than the corporation or a shareholder, recklessness or an act or omission which was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 607.0831(1). Based on this statute, Florida law imposes liability upon directors only if they commit a violation in one of the above-listed five categories.

As alleged in the complaint, the only conceivable violation is that the Defendants' failures constituted "conscious disregard for the best interest of the corporation, or willful misconduct." Fla. Stat. § 607.0831(1)(b)(4). This type of violation would clearly rise above the level of ordinary negligence as alleged in Count I. The FDIC urges this Court to interpret Florida's business judgment rule as an affirmative defense that the Defendants are not entitled to use as a basis for a motion to dismiss under Rule 12(b)(6).[2] The Court joins other courts in interpreting the Florida statutes to exclude a cause of action against directors for ordinary negligence. *See FDIC v. Stahl*, 89 F.3d 1516 n.12 ("The Florida legislature passed Fla. Stat. [§§ 607.0830-.0831] to afford corporate officers and directors greater protection from liability [than ordinary negligence] . . . ."); *FDIC v. Gonzalez-Gorrondona*, 833 F. Supp. 1545, 1556 (S.D. Fla. 1993) ("We find that the Florida statute insulates corporate

---

[2]The FDIC repeatedly mentions its appeal pending before the Eleventh Circuit on an allegedly identical issue. As framed by the FDIC in its petition for appeal, the question raised is "whether courts can create judicial rules that insulate defendants from liability for ordinary negligence even if the governing statute imposes an ordinary negligence standard of care." The appeal arises from Georgia's judicially created business judgment rule. That context is significantly different than Florida's business judgment rule because Florida's rule is part of the statutory standard of care codified by the legislature. Thus, the Court is not persuaded that an opinion addressing Georgia's business judgment rule would impact the interpretation of Florida's corporate statutes.

directors and officers from conduct amounting to gross negligence, and permits liability only for greater derelictions of the duty of care."); *FDIC v. Brudnicki*, 2013 WL 2145720, at *2 (N.D. Fla. May 15, 2013) (dismissing almost identical claims brought by the FDIC based on § 607.0831); *Price*, 2012 WL 3242316, at *3 (dismissing nearly identical claims brought by the FDIC against directors of a failed bank because "the statute conditions directorial liability on something beyond ordinary negligence").

The FDIC next argues that, even if its claim for ordinary negligence should be dismissed against directors as a matter of Florida law, Count I should not be dismissed as to Defendant O'Neill who was alleged to serve as both an officer and director of Century. The FDIC alleges in its complaint that O'Neill, in his capacity as an officer, was grossly imprudent and acted without the slightest degree of care when he approved the ten transactions listed on Exhibit A. Compl. at 12, ¶ 33.

The Defendants argue that O'Neill should not be stripped of his protection as a director simply because he also served as an officer. Moreover, they urge that the FDIC has sued all the Defendants, including O'Neill, for their alleged acts and omissions in their capacities as directors. The FDIC responds that the plain language of the statute limits its application to directors. The Court agrees.

Whether § 607.0831 extends to an officer-director is an unsettled issue under Florida law. A straightforward reading of the statute makes it appear that the business judgment rule eliminates claims for ordinary negligence against directors only. There is no mention of officers receiving the same protection in the statute. Neither party cites a binding opinion

from the Eleventh Circuit or a Florida court on the issue.  Rather, the Defendants point to

dicta in two cases that casually refer to § 607.0831's expanded protections to "directors and

officers." *FDIC v. Stahl*, 89 F.3d 1516 n.12 ("The Florida legislature passed Fla. Stat. [§§

607.0830-.0831] to afford corporate *officers and directors* greater protection from liability

[than ordinary negligence] . . . ."); *FDIC v. Gonzalez-Gorrondona*, 833 F. Supp. 1545, 1556

(S.D. Fla. 1993) ("We find that the Florida statute insulates corporate *directors and officers*

from conduct amounting to gross negligence, and permits liability only for greater

derelictions of the duty of care.") (emphasis added).  The FDIC points to two cases: a

Northern District of Florida case that held an officer-director is not entitled to the protections

of § 607.0831 and a Central District of California case that held that state's statutory business

judgment rule did apply to corporate officers.  *FDIC v. Brudnicki*, 2013 WL 2145720 (N.D.

Fla. May 15, 2013); *FDIC v. Perry*, 2012 WL 589569 (C.D. Cal. Feb. 21, 2012).

The Court finds its sister court's recent opinion persuasive on the issue and adopts

District Judge Richard Smoak's reasoning in *FDIC v. Brudnicki*.  Judge Smoak explained

as follows:

> I find that the statute does not afford the same protections to officers as it does
> to directors.  In the very same act that created section 607.1645, the precursor
> to section 607.0831, the legislature added a section with parallel language to
> the statute allowing corporations to indemnify officers, directors, employees,
> and agents.   To this section the legislature added, "indemnification or
> advancement of expenses shall not be made to or on behalf of any director,
> officer, employee, or agent if a judgment or other final adjudication establishes
> that his or her actions, or omissions to act, were material to the cause of action
> so adjudicated and constitute . . . **willful misconduct or a conscious
> disregard for the best interests of the corporation."**   Fla. Stat. §
> 607.014(7)(d) (1987), now codified at Fla. Stat. § 607.0850(7)(d) (1989).  The

standard to impose director liability was, and remains, **"conscious disregard for the best interest of the corporation, or willful misconduct."** Fla. Stat. § 607.0831(1)(b)(4). These two sections, added by the same legislative act, are clearly related and plainly show that the legislators intentionally differentiated between directors, officers, employees, and agents. Directors can only be liable if there is willful misconduct or conscious disregard for the best interests of the corporation, and the corporation cannot indemnify them in that situation. Officers, employees, and agents may be liable for something less than conscious disregard for the best interests of the corporation or willful misconduct, and can be indemnified by the corporation in that situation. This differentiation is highlighted by the reasoning behind heightening the standard for director liability:

> The Legislature . . . finds that the service of qualified person [sic] on the governing boards of corporations . . . is in the public interest and that within reasonable limitations, such persons should be permitted to perform without undue concern for the possibility of litigation arising from the discharge of their duties as policy makers. The Legislature further finds that the case law of the state does not adequately delineate the liability of those serving on governing boards, and that such delineation through the clarification of the appropriate standard of care due an individual and a corporation by a member of a governing board is essential in encouraging the continued service of qualified persons on such governing boards.

1987 Fla. Laws. 1686. The Legislature evinced no concerns about finding qualified people to serve as presidents and chief executive officers of corporations, which are substantially different responsibilities than serving on a board of directors while not a corporate officer.

*Brudnicki*, 2013 WL 2145720, at *2-3.

Likewise, the Court concludes that O'Neill is not entitled to the protection of § 607.0831 as far as the claim for ordinary negligence arises in his officer capacity. Accordingly, because § 607.0831 prohibits liability for ordinary negligence, Count I must be dismissed with prejudice as a matter of law against all the Defendants except for Defendant O'Neill.

## II.      Count II: Gross Negligence

The Defendants move to dismiss the claim for gross negligence based on the FDIC's "inappropriate allegations of ordinary negligence masquerading as gross negligence."  Dkt. 16 at 1-2.  The FIRREA defines gross negligence according to applicable state law.  12 U.S.C. § 1821(k).  Gross negligence under Florida law requires that a defendant  have "knowledge of the existence of circumstances which constitutes a 'clear and present danger' and yet still undertakes 'a conscious, voluntary act or omission . . . which is likely to result in injury.'"  *Cent. State Transit & Leasing Corp. v. Jones Boat Yard, Inc.*, 206 F.3d 1373, 1377 (11th Cir. 2000) (quoting *Sullivan v. Streeter*, 485 So. 2d 893, 895 (Fla. 4th Dist. Ct. App. 1986).  Stated another way, a plaintiff may plead gross negligence by alleging facts that show a defendant failed to exercise "slight care" in circumstances likely to result in injury.  *Farrell v. Fisher*, 578 So. 2d 407, 409 (Fla. 4th Dist. Ct. App. 1991).[3]

Although Count II does include ordinary negligence allegations, it also includes factual allegations that state a plausible claim for gross negligence under Florida law.  The FDIC alleges that the Defendants approved the ten transactions at issue despite knowledge of the failing real estate market and alleged, among other things, that the Defendants:

- deliberately pursued a speculative, high-risk growth strategy, the risks of which were compounded by a failure to implement sound credit procedures and practices, even though they had been warned by regulators to curb overconcentration, and after the Defendants acknowledged that the Bank was overly concentrated in risky credits.

---

[3]The Defendants spend several pages discussing Delaware's business judgment rule as the basis for why the FDIC has failed to state a cause of action for gross negligence.  However, the standard for gross negligence is determined by Florida law, not Delaware law.

- approved transactions in violation of the Bank's own concentration limits and in violation of regulatory guidelines relating to concentrations

- approved transactions with chronic underwriting deficiencies that were apparent and were the subject of warnings from regulators

- repeatedly failed to perform the analysis necessary to learn whether borrowers and guarantors could actually service the debt, or ignored the information presented to them that established the inability of borrowers and guarantors to service debt

- approved transactions without obtaining or with insufficient supporting appraisals of the value of collateral despite prior warnings from regulators

- approved transactions in violation of Bank and regulatory loan-to-value limitations despite prior warnings from regulators

These allegations state a plausible claim for gross negligence as defined under Florida law. *See FDIC v. Brudnicki*, 2013 WL 2145720 (N.D. Fla. May 15, 2013) (finding claim for gross negligence sufficient for nearly identical allegations); *see also FDIC v. Price*, 2012 WL 3242316 (M.D. Fla. Aug. 8, 2012).

Defendants also seek to strike all allegations of ordinary negligence from Count II based on them being irrelevant and confusing.  It is well settled among courts in this circuit that motions to strike are generally disfavored and will usually be denied unless it is clear the pleading sought to be stricken is insufficient as a matter of law.  *See, e.g., Meth Lab Cleanup, LLC v. Spaulding Decon, LLC*, 2011 WL 398047, at *1 (M.D. Fla. 2011).  The FDIC's references to ordinary negligence in Count II do not rise to the level of "redundant, immaterial, impertinent, or scandalous matter" and the Court therefore denies Defendants' motion to strike them.

Defendants also seek a more definite statement based on the defendants being lumped together in the majority of the complaint's allegations.  "When multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually."  *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997).  Upon reviewing the complaint and Exhibit A which lists the ten transactions, their amounts, approval dates, board member votes, and their alleged deficiencies, the Court finds the complaint's allegations are sufficiently clear to put each individual Defendant on notice of his specific misconduct for each transaction.  As for the identities of the borrowers, identified only by initials in Exhibit A, the Defendants will receive more details during the discovery process.

Finally, the Defendants move to dismiss the entire complaint because the FDIC did not sufficiently allege that their acts or omissions were the proximate cause of Century's losses.  The FDIC alleged in its complaint that the "adversely affected [] risk profile of Century" and those consequential damages to be proven at trial were "a direct and proximate result of the Defendants' grossly negligent actions and omissions."  Dkt. 1 at 23, ¶ 78.  More specifically, the FDIC alleged that:

> Due to the deficient underwriting allowed by the Defendants in approving transactions, including the ten Transactions referenced in Exhibit A, as well as deficient risk management and poor credit administration, Century was fatally exposed to the inevitable cyclical decline in real estate values.  As real estate markets declined, the Bank's financial condition deteriorated and its condition was deemed critical.  Asset quality problems in the Bank's portfolio resulted in material losses that threatened the Bank's viability.   The Defendants failed to take necessary and timely actions to improve the Bank's financial condition, and Century failed on November 13, 2009.

Dkt. 1 at 10, ¶ 29.  Exhibit A includes the amount lent to the individual borrowers as well as an estimated amount of damages for each transaction.  Although the complaint does not detail what part of the funds were not repaid by the borrower and what part of the funds were not covered by the sale of the collateral, it is sufficiently clear that the failure to have the loans fully repaid to Century caused its financial decline and contributed to its eventual closure.  Thus, the FDIC has adequately alleged causation.

It is therefore ORDERED AND ADJUDGED that:

1.     Defendants' Motion to Dismiss, Strike, or For More Definite Statement (Dkt. 16) is granted in part and denied in part as stated herein.

2.     Count I is dismissed with prejudice against all Defendants except for Defendant O'Neill.  Count II remains.

3.     Defendants shall file an answer to the complaint within fourteen (14) days of the date of this Order.

**DONE** and **ORDERED** in Tampa, Florida on June 10, 2013.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record
S:\Odd\2012\12-cv-2547.mtdismiss.frm